UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Daniel A. Umbert *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 18-cv-1336 (TSC) |
| United States *et al.*, | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

Defendants have moved to Dismiss in Part and for Severance of the Remaining Claims, ECF No. 12 ("Defs.' Mot.").[1] For the reasons explained below, the court will GRANT the motion to dismiss Plaintiffs Chodosh, Bickel, and Stewart's claims as moot, and will DENY the motion to sever Plaintiffs Umbert, Eaton, LeComte, Bargeron, and Borquez's claims.

## I. BACKGROUND

### A. Legal Background

Congress enacted the Gun Control Act of 1968, Pub. L No. 90-618, 82 Stat. 1213, "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976). In 1993, the Brady Handgun Violence Prevention Act, Pub. L. No. 103-159, 107 Stat. 1536, amended the Gun Control Act by requiring individuals seeking to obtain a firearm or other regulated piece of equipment to pass a background check. *See* 18 U.S.C. § 922(t).

---

[1] Defendants also moved to stay their further response to the Amended Complaint pending the outcome of this motion. That application is granted *nunc pro tunc*.

A person seeking to obtain a firearm may do so by purchasing one from a Federal Firearm Licensee (FFL)—someone who can legally participate in the sale of firearms,[2] *See* 18 U.S.C. § 923(a), or, by filing an application, known as Form 4, with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to complete a National Firearms Act (NFA) transfer of a firearm. *See* 27 C.F.R. § 479.86.

When someone attempts to purchase a firearm from an FFL, the FFL sends information about the purchaser to the Federal Bureau of Investigation (FBI), which conducts a background check using the National Instant Criminal Background Check System (NICS). *See* 34 U.S.C. § 40901(b)–(c). If an individual seeks to obtain a firearm by filing Form 4 with the ATF, the ATF contacts the FBI to conduct the background check. *See* 27 C.F.R. § 479.86. After the background check is completed, the ATF decides whether to transfer the firearm to the individual or to deny the request. *See id*.

When the FBI conducts an NICS background check, it searches three databases: (1) the NICS Index, (2) the National Crime Information Center (NCIC), and (3) the Interstate Identification Index (III). *See* 28 C.F.R. § 25.6(c)(iii). Next, the FBI NICS Operations Center determines if the transaction can "proceed," if the application should be "denied," or if the transaction should be "delayed" to give the FBI more time to investigate the applicant. 28 C.F.R. § 25.6(c)(iv). A person may be denied if he "has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

---

[2] The term "FFL" is used in both the Amended Complaint and the Defendants' Memorandum, but not in the statute itself. Plaintiffs' Amended Complaint ("Am. Compl.") ¶ 17; Memorandum in Support of Defendants' Motion ("Def.'s Mem.") at 1.

A person who believes he or she has been erroneously denied or delayed in purchasing a firearm can file an appeal with the FBI. *See* FBI, Appeals and Voluntary Appeal File (VAF), https://www.fbi.gov/services/cjis/nics/national-instant-criminal-background-check-system-nics-appeals-vaf (last visited Sept. 11, 2019). The VAF is a system maintained by the FBI that stores an individual's record of past acceptances, denials, delays, and appeals. *See id.* An individual can apply to the VAF to request that his records be kept in the system. *See id.* An applicant who is accepted and entered into the VAF is given a Unique Personal Identification Number (UPIN) that allows him to access his records to expedite a future transaction. *See id.* After the FBI reviews an appeal, it deletes the record of the transaction unless the applicant is in the VAF. *See id.*

Besides filing an appeal, a person who is not prohibited from owning a firearm under 18 U.S.C. § 922(g) and is denied after a background check "may bring an action against the State or political subdivision responsible for providing the erroneous information . . . or against the United States . . . for an order directing that the erroneous information be corrected or that the transfer be approved." 18 U.S.C. § 925A.

### B. Plaintiffs' Claims

On June 5, 2018, Daniel Umbert, Troy Chodosh, Erroll Eaton, Chase Bickel, and Gary LeComte filed their original Complaint, ECF No. 1. On July 1, 2018, they filed an Amended Complaint, ECF No. 6, adding Justin Bargeron, Kevin Borquez, and Charles Stewart's claims. Each Plaintiff had tried to obtain a firearm or a suppressor—a piece of equipment that can be attached to a firearm to dampen its sound—but did not pass the background check. Plaintiffs allege that Defendants improperly prevented them from purchasing firearms and violated their

Second Amendment and statutory rights under 18 U.S.C. § 925A. *See id.* ¶¶ 158–167. Plaintiffs further allege that the FBI violated their Fifth Amendment procedural due process rights by not processing their appeals. *See id*. ¶¶ 175–191.

1. Plaintiffs Umbert, Eaton, Bargeron, and Borquez

Four Plaintiffs—Umbert, Eaton, Bargeron, and Borquez—allege that they filed Form 4 with the ATF, which subsequently denied their requests. *See id.* ¶¶ 61–62.

Umbert submitted Form 4 on August 1, 2017 to purchase a suppressor. *See* Am. Compl. ¶¶ 88–90; Ex. 2 at 1. He alleges that the ATF denied his request in a form letter on March 13, 2018 without explaining why he did not pass his background check. *See id.*

Eaton also applied for a suppressor using Form 4. *See id.* ¶ 119. In May 2018, his application was "disapproved" after his status remained "open"[3] on the FBI's website for eighty-eight days. *See id*. ¶ 120; Ex. 7 at 2. Although Eaton had been found guilty of marijuana possession in 2003, the Municipal Court of the City of Starkville, Mississippi expunged his record on July 10, 2008. *See id.* ¶¶ 116–17; Ex. 6. Eaton claims that his expunged record means that he is not a "prohibited person." Am. Compl. ¶¶ 118, 121.

Bargeron also applied for a suppressor by filing Form 4 with the ATF, but the ATF denied his transfer after he failed his NICS background check. *See id*. ¶¶ 135–37. Bargeron had previously pleaded guilty to a crime, but he alleges that his conviction was "discharged" in 2009, and that he should therefore be able legally to purchase a firearm. Am. Compl. ¶¶ 138, 140–41, Exs. 10–11.

---

[3] An open status indicates that the FBI never reported a final disposition for the individual's background check. *See* Am. Compl. Ex. 7 at 2.

Borquez attempted to transfer "various NFA registered items" to himself,[4] but the FBI denied his transfer. *Id*. ¶ 147. Although Borquez had been convicted of a crime in 2007, the Los Angeles Superior Court dismissed his conviction in 2010. *See* Am. Compl. ¶¶ 142–43; Ex. 12. On May 8, 2019, Borquez filed a Notice with this court, stating that he had successfully appealed the FBI's denial of a more recent attempt to purchase a non-NFA related firearm. *See* Borquez Notice at 1, ECF No. 19; DOJ Letter, ECF No. 19-1. Borquez argues that, given this earlier approval, he was improperly denied permission to transfer the items. *See* Borquez Notice at 1.

Umbert, Bargeron, and Borquez allege that they sought to appeal their denials, but that the FBI told them it does not process appeals for NFA background checks. *See* Am. Compl. ¶¶ 92, 136, 148.

2. Plaintiff LeComte

LeComte claims the FBI denied his attempt to transfer a firearm he had previously pawned. *See id*. ¶ 122. After LeComte filed an appeal, the FBI informed him that he was prohibited from transferring the weapon because he had two prior arrests. *See id*. ¶¶ 123–25; Ex. 8 at 3 ("LeComte Appeal"). The FBI told LeComte that he would have to research and provide information about his criminal record to the FBI if he wished to appeal his denial.[5] *See* Am. Compl. ¶ 126; LeComte Appeal at 1. Although the FBI did not deny LeComte's appeal,

---

[4] A reasonable inference is that Borquez sought to transfer a suppressor by filing Form 4 with the ATF, even though that was not specifically alleged in the Amended Complaint. *See* Am. Compl. ¶¶ 61–62.

[5] LeComte recently filed a Notice with the court referencing a letter from the Courtroom Deputy to the Honorable Magistrate Judge Jeremy D. Patterson of the U.S. District Court for the Eastern District of California. It states that LeComte's previous arrests were likely misdemeanors or petty offenses. *See* LeComte Notice, ECF No. 16; Ex. Letter. This Notice is not relevant to the motion before this court.

LeComte alleges that the FBI improperly shifted the burden to him to show why he should not be prohibited from obtaining a firearm. *See* Am. Compl. ¶ 132.

### 3. Plaintiffs Chodosh, Bickel, and Stewart

The three remaining Plaintiffs—Chodosh, Bickel, and Stewart—were unable to purchase a firearm because they did not pass the FBI background checks. Both Chodosh and Stewart allege that they attempted to purchase a firearm from an FFL. *See id*. ¶¶ 100, 151. Although Bickel does not specifically allege having tried to buy from an FFL, he claims that "upon a recent attempt to purchase a firearm, NICS denied . . . his transfer." *Id*. ¶ 111.

Chodosh pleaded guilty to marijuana possession in 1999, and the 117th District Court of Nueces County, Texas gave him deferred adjudication and community supervision. *See id*. ¶¶ 96–97; Ex. 3 at 1–2. However, Chodosh claims that he was able to withdraw his guilty plea in 2011 after fulfilling all the obligations in his plea agreement, and that he should therefore not be barred from buying a firearm. *See* Am. Compl. ¶¶ 98, 105; Ex. 4. He also claims that he appealed his denial on April 17, 2017, and there had been no activity on his appeal as of the time Plaintiffs filed the Amended Complaint. *See id.* ¶ 102.

The FBI also denied Bickel's request to buy a firearm, even though he had a "current [l]icense to [c]arry a [h]andgun" and had previously passed background checks. *Id*. ¶ 111. Bickel had been charged with two Class D felonies in 2005. *See id*. ¶ 108. He alleges that because one felony was reduced to a Class A misdemeanor and the other was dismissed, his charges should not disqualify him from purchasing a firearm. *See id*. ¶¶ 109–10; Ex. 5 at 2. Bickel also appealed his denial but alleges nothing further with respect to the status of this appeal. *See* Am. Compl. ¶ 113.

Stewart attempted to purchase several firearms from an FFL, but the FBI delayed his transactions. *See id.* ¶ 151. Subsequently, the ATF informed Stewart that the FBI believed he was a prohibited person. *See id.* ¶ 152; Ex. 16 at 1. However, after conducting his own research, Stewart discovered that the FBI had apparently confused him with a different Charles Stewart, who had a "prohibiting record." Am. Compl. ¶¶ 154–55. At the time the Amended Complaint was filed, the FBI still prohibited Plaintiff Stewart from purchasing a firearm. *See id.* ¶ 156.

### C. Procedural History

Plaintiffs ask the court to order Defendants to: (1) correct Plaintiffs' records so that they are no longer forbidden from purchasing firearms; (2) permit the transfer of Plaintiffs' firearms; and (3) grant each Plaintiff a UPIN. *See id.* at 35. Plaintiffs also ask the court to declare that Defendants' conduct "violate[s] applicable statutory law, the Fifth Amendment and the Second Amendment;" find that suppressors are in common use; enjoin Defendants from "conduct which violates applicable statutory law, the Fifth Amendment and the Second Amendment;" and award Plaintiffs' attorneys fees. *Id.* at 35–36.

After Plaintiffs filed the Amended Complaint, the FBI determined that Chodosh, Bickel, and Stewart were eligible to obtain firearms and filed Declarations from an FBI custodian of records to that effect. Defs.' Mem. at 6; Barker Declaration (Chodosh) ¶ 4; Barker Declaration (Bickel) ¶ 8; Barker Declaration (Stewart) ¶ 5. In light of this development, Defendants argue that Chodosh, Bickel, and Stewart's claims should be dismissed as moot because each of them can now legally purchase a firearm. Defs.' Mem. at 2. Defendants also argue that the five remaining Plaintiffs' claims should be severed because they were improperly joined. *Id.*

## II. LEGAL STANDARDS

### A. Dismissal under Rule 12(b)(1)

The court must dismiss a claim if it lacks subject-matter jurisdiction over the case. *See Bell v. U.S. Dep't of Health and Human Servs.*, 67 F. Supp. 3d 320, 322 (D.D.C. 2014); *see also Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) ("[A] Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."). Because the court must ensure that jurisdiction exists to adjudicate a claim, "'the [p]laintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion." *Grand Lodge*, 185 F. Supp. 2d at 13 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. 2d, § 1350 (2d ed. 1987)). Therefore, "[t]he plaintiff bears the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain his claims." *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177 (D.D.C. 2007). In addition, the court "may consider the complaint supplemented by undisputed facts evidenced in the record." *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B. Severance Under Rules 20(a) and 21

The court has the discretion to sever misjoined parties under Federal Rule of Civil Procedure 21 "to avoid prejudice to the parties or confusion to the jury." *Montgomery v. STG International Inc.,* 532 F. Supp. 2d 29, 35 (D.D.C. 2008). Federal Rule of Civil Procedure 20(a) permits parties to be joined through permissive joinder "to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it." *M.K. v.*

*Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002). Therefore, "[t]he two prongs of Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy." *Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 53 (D.D.C. 2012) (internal citations omitted).

## III. ANALYSIS

### A. Mootness

#### 1. Chodosh, Bickel, and Stewart's Claims

The court is permitted only to "adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). A case becomes moot when "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Transwestern Pipeline Co. v. F.E.R.C.*, 897 F.2d 570, 575 (D.C. Cir. 1990). Therefore, the court loses subject-matter jurisdiction over a case when it becomes moot. *See Mundo Verde Public Charter School v. Sokolov*, 315 F. Supp. 3d 374, 379–80 (D.D.C. 2018). "The party seeking jurisdictional dismissal must establish mootness, while the opposing party has the burden to prove that a mootness exception applies." *Reid v. Inch*, 920 F.3d 828, 832 (D.C. Cir. 2019).

Since this case was filed, Chodosh, Bickel, and Stewart are now able legally to purchase firearms and pass background checks, and Defendants argue that these three Plaintiffs have therefore received their requested relief. *See* Defs.' Mem. at 6; Barker Declaration (Chodosh) ¶ 4; Barker Declaration (Bickel) ¶ 8; Barker Declaration (Stewart) ¶ 5. Chodosh, Bickel, and Stewart contend that they have not received the full relief they seek, because only Bickel received the requested UPIN. *See* Plaintiffs' Response to Defendants' Motion ("Pls.' Resp. to Defs.' Mot.") at 2, ECF No. 13.

9

The only way to obtain a UPIN is by personally applying for one through the VAF process. *See* Barker Declaration (Nov. 2, 2018) ¶ 2. Bickel was the only Plaintiff who voluntarily chose to go through the VAF process; therefore, only Bickel received a UPIN. *See* Defs.' Reply at 2; Barker Declaration (Bickel) ¶ 7. Chodosh and Stewart can apply to the VAF for a UPIN, but the Defendants cannot apply on their behalf. Because Chodosh, Bickel, and Stewart can purchase a firearm and can personally apply for a UPIN, there is no further relief that the court can grant for them at this time.

### 2. Chodosh, Bickel, and Stewart's Claims do not Satisfy a Mootness Exception

Plaintiffs further contend that their claims are not moot because they also seek declaratory relief. *See* Am. Compl. ¶ 69. They ask the court to declare that "Defendants' laws, customs, practices and policies violates [sic] the Second Amendment to the United States Constitution, the Fifth Amendment to the United States Constitution and applicable statutory law, facially and as applied against the Plaintiffs in this action, damaging them." Am. Compl. ¶ 174.

Defendants counter that there is no declaratory relief that the court can grant these three Plaintiffs. *See* Defs.' Mem. at 8. Although the Plaintiffs' request is vague, the court infers that they seek declaratory relief regarding the Defendants' alleged failure to process NICS appeals. *See* Am. Compl. ¶¶ 84–85 ("Defendants' refusal to process Plaintiffs [sic] NICS appeals infringes upon their Second Amendment rights, chills protected activity and violates Plaintiffs' due process rights. Plaintiffs seek declaratory relief (as well as other relief) that this policy violates Plaintiffs [sic] Second Amendment rights."). Defendants and Plaintiffs disagree as to

whether the FBI has a policy of not processing appeals of NICS background checks.[6] *See id.* at 7–8.

Plaintiffs attached to their Amended Complaint an Exhibit that includes FBI e-mails showing that the FBI did not process appeals in late 2015. *See* Am. Compl. ¶¶ 77–78; Ex. 1, ECF No. 6-1. Although Defendants concede there was a "temporar[y]" halt of FBI NICS appeals starting in November 2015, the NICS started reviewing appeals again in 2016. Shillingburg Declaration ¶ 3.

Chodosh, Bickel, and Stewart do not allege that their appeals were filed during this temporary halt. Rather, they claim that the FBI did not respond to their appeals and that the FBI appeals process has been sporadic since 2016. *See* Pls.' Resp. to Defs.' Mot. at 4 (referencing FBI, 2017 NICS Operations Report, https://www.fbi.gov/file-repository/2017-nics-operations-report.pdf (last visited July 3, 2019)). Therefore, they argue, Defendants have not shown that the FBI will consistently process NICS appeals going forward. Defendants respond that the "Fix NICS Act," passed by Congress in 2018, will ensure that the FBI processes appeals. *See* Defs.' Reply at 3–4; Consolidated Appropriations Act, 2018 Pub. L No. 115-141, 132 Stat. 348. The Act requires that the FBI process NICS appeals within sixty days. *See* 34 U.S.C. § 40901(g) ("[N]ot later than 60 days after the date on which the Attorney General receives such information, the Attorney General shall determine whether or not the prospective transferee is the subject of an erroneous record and remove any records that are determined to be

---

[6] Defendants concede that ATF NFA transfers cannot be appealed, *see* Defs.' Reply at 5, but this policy does not apply to Chodosh, Bickel, and Stewart because they did not attempt to transfer a firearm. *See* Am. Compl. ¶ 189.

erroneous."). Given the passage of the Act, it appears that the FBI does not have a policy of systematically refusing to process NICS appeals.

Perhaps anticipating Defendants' argument, Plaintiffs maintain that their claim falls into the "capable of repetition, yet evading review" exception. Am. Compl. ¶ 65–66. This doctrine permits a court to order declaratory relief "when '(1) the challenged action [i]s in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again.'" *People for the Ethical Treatment of Animals, Inc. v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 97 (D.D.C. 2014) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

Chodosh, Bickel and Stewart's claims do not satisfy the first prong of the exception, because even if their appeals are denied after a future NICS background check, there is no indication that these denials would be too brief to be fully litigated. *See Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) (concluding that prong one is not satisfied when the alleged action, the denial of a fee waiver, was not of "such short duration" that it could not be fully litigated in the future).

Plaintiffs' claims do not satisfy the exception's second prong because Chodosh, Bickel, and Stewart do not demonstrate that they will likely face an erroneous denial in the future. They argue that even if they have a UPIN, the FBI could erroneously deny their request to buy firearms in the future, because "an entry into the VAF will not automatically result in a proceed response from the NICS." Pls.' Resp. to Defs.' Mot. at 2 (citing Barker Declaration (Bickel) ¶ 3). However, this allegation is purely speculative, and Plaintiffs have provided no evidence to show there is a reasonable expectation they will be denied a future purchase. Therefore,

erroneous."). Given the passage of the Act, it appears that the FBI does not have a policy of systematically refusing to process NICS appeals.

Perhaps anticipating Defendants' argument, Plaintiffs maintain that their claim falls into the "capable of repetition, yet evading review" exception. Am. Compl. ¶ 65–66. This doctrine permits a court to order declaratory relief "when '(1) the challenged action [i]s in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again.'" *People for the Ethical Treatment of Animals, Inc. v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 97 (D.D.C. 2014) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

Chodosh, Bickel and Stewart's claims do not satisfy the first prong of the exception, because even if their appeals are denied after a future NICS background check, there is no indication that these denials would be too brief to be fully litigated. *See Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) (concluding that prong one is not satisfied when the alleged action, the denial of a fee waiver, was not of "such short duration" that it could not be fully litigated in the future).

Plaintiffs' claims do not satisfy the exception's second prong because Chodosh, Bickel, and Stewart do not demonstrate that they will likely face an erroneous denial in the future. They argue that even if they have a UPIN, the FBI could erroneously deny their request to buy firearms in the future, because "an entry into the VAF will not automatically result in a proceed response from the NICS." Pls.' Resp. to Defs.' Mot. at 2 (citing Barker Declaration (Bickel) ¶ 3). However, this allegation is purely speculative, and Plaintiffs have provided no evidence to show there is a reasonable expectation they will be denied a future purchase. Therefore,

Plaintiffs' claims do not satisfy the "capable of repetition, yet evading review" exception. *See Columbian Rope Co. v. West*, 142 F.3d 1313, 1317 (D.C. Cir. 1998) (finding that the capable of repetition, yet evading review doctrine did not apply when the Plaintiff made speculative allegations regarding the possibility of facing the same problem in the future).

Plaintiffs also suggest in their opposition that their case satisfies the "voluntary cessation" exception to the mootness doctrine. Pls.' Resp. to Defs.' Mot. at 3. "[A]s a general rule, voluntary cessation of the allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal citations omitted). However, "[a] court may . . . conclude that voluntary cessation has rendered a case moot if (1) there is no reasonable expectation that the alleged violation will recur, . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 96 (D.D.C. 2014) (internal citations omitted). Therefore, when a court evaluates whether "voluntary cessation" of conduct has mooted a case, it focuses on the defendant's actions and evaluates whether the defendant has "manipulat[ed] the judicial process by voluntarily ceasing the complained of activity." *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990). The Supreme Court has advised caution when dismissing claims for mootness:

> We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. . . . Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Therefore, courts place a heavy burden on the party asserting mootness to show "the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167,

189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n., Inc.*, 393 U.S. 199, 203 (1968)).

Defendants argue that there is no indication the challenged conduct will occur again in the future. *See* Defs.' Reply at 3–4. The FBI has processed appeals since the temporary halt, and the Fix NICs Act requires the FBI to process appeals within sixty days. *See* Shillingburg Declaration ¶ 3; 34 U.S.C. § 40901(g). Although Plaintiffs contend that appeal decisions have been sporadic since the temporary halt, they have not shown that the problem continued after enactment of the Fix NICs Act. *See* Pls.' Resp. to Defs.' Mot. at 4. Because Chodosh, Bickel, and Stewart's records show that they can now purchase firearms, and the new law ensures that future appeals will be processed, the court finds that the "voluntary cessation" doctrine does not apply. Therefore, Chodosh, Bickel, and Stewart's claims will be dismissed as moot.

**B. Severance**

Rule 20(a) allows for permissive joinder of Plaintiffs if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Prong one of Rule 20(a) is satisfied when the court concludes that the Plaintiffs' claims are "logically related." *Disparte v. Corp. Executive Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004). The "logically related" standard is a "flexible test where the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *Montgomery*, 532 F. Supp. 2d at 35 (internal citations omitted). Prong two is satisfied if there is "some common question of law or fact in the plaintiffs' claims, [although] not all issues have to be common to all plaintiffs." *Id.*

The court finds that Plaintiffs Umbert, Eaton, LeComte, Bargeron, and Borquez's claims are logically related and should not be severed at this time. Each Plaintiff contends that the FBI conducted a NICS background check of his records, and that the FBI erroneously denied his application to obtain a firearm or suppressor. Umbert, Eaton, Bargeron and Borquez each applied for a transfer of a suppressor through filing Form 4 with the ATF, and the ATF denied each request for transfer after the FBI conducted an NICS background check. *See* Am. Compl. ¶¶ 61–62. Although LeComte does not allege to have interacted with the ATF, the FBI similarly denied his request to purchase a firearm. *See* Am. Compl. ¶ 122. The five Plaintiffs' claims therefore show a logical connection, satisfying the first prong of Rule 20(a). Because they all allege that the FBI erroneously denied their requests to purchase, they also share common questions of law and/or fact. *See* Am. Compl. ¶ 185. Therefore, Rule 20(a)'s second prong is satisfied.

Moreover, severance at this stage of litigation would be premature and inefficient. By keeping the Plaintiffs' claims together, discovery can proceed more efficiently. *See Lane v. Tschetter*, 2007 WL 2007493, at *7 (D.D.C. July 10, 2017) (finding that joint discovery would permit expedient adjudication of the case). And Defendants face no material prejudice by keeping the cases together. *See Montgomery*, 532 F. Supp. 2d at 36. Therefore, the issue of severance should be held in abeyance until the end of discovery, at which time Defendants will be permitted to renew their motion for severance. *See, e.g., Lane*, 2007 WL 2007493, at *7 (denying the severance motion at the motion to dismiss stage and permitting defendants to bring a subsequent severance motion after the record was "further developed").

## IV. CONCLUSION

For the reasons stated above, the court will GRANT Defendants' motion to dismiss Plaintiffs Chodosh, Bickel, and Stewart's claims as moot. The court will DENY without prejudice Defendants' motion to sever Plaintiffs Umbert, Eaton, LeComte, Bargeron, and Borquez's claims.

A separate Order will follow.

Date: September 11, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge